**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

v.

GEORGINA FISHER,

Defendant.

15-CR-19-A
**DECISION AND ORDER**

---

Randall P. Andreozzi, Tiffany D. Bell, and Justin J. Andreozzi have moved to withdraw as counsel for the Defendant, Georgina Fisher. *See* Docket No. 195. The Court assumes familiarity with this case's procedural history, as well as the reasons for counsel's motion.[1] In brief, counsel move to withdraw because Fisher has incurred a $▮▮▮▮▮▮▮ legal debt that she has "no ability to pay," and because she is likewise unable to "pay for her counsel of choice for her defense at a trial scheduled to commence on December 12, 2017." Docket No. 195 at ¶ 18.[2]

On October 11, 2017, the Court directed Fisher and counsel to submit a number of documents to help the Court resolve counsel's motion. *See* Docket No. 196. In response, counsel have filed, among other things, a billing summary and an affidavit from Fisher. In her affidavit, Fisher states that she "must . . . ask this Court to force [current

---

[1] The Court has summarized this case's lengthy procedural history in two prior Decisions and Orders. *See* 225 F. Supp. 3d 151 (W.D.N.Y. 2016); --- F. Supp. 3d ---, 2017 WL 2790651 (W.D.N.Y. 2017).

[2] Counsel has billed Fisher a total of $▮▮▮▮▮▮▮. Of that amount, Fisher has paid $▮▮▮▮▮▮▮. The Court permitted counsel to file their billing records, as well as Fisher's retainer agreement, under seal and *ex parte* "[i]n the event that the retainer agreement and/or billing records contain any information protected by the attorney-client privilege or the attorney work-product doctrine." Docket No. 196 at 3. Similarly, the Court allowed Fisher to file her completed CJA financial affidavit under seal. *See* CJA Guideline § 510.40. The Court will file on the public docket a copy of this Decision and Order that redacts financial information obtained from those sealed documents. An un-redacted copy of this Decision and Order will remain under seal "until after all judicial proceedings, including appeals, in th[is] case are completed," unless either party (1) moves, prior to the conclusion of this case, to unseal the un-redacted Decision and Order, or (2) moves, after the conclusion of this case, to extend the seal. *Id.*

1

counsel] to defend [Fisher] without any real prospect of being paid from [Fisher] for their continued work." Docket No. 292-2 at 3. *See also id.* ("I do not wish to continue to financially hurt the legal firm that has so passionately defended me thus far, but I must take the position to object.") The Court has considered these additional documents, as well as the entire record in this case, in deciding counsel's motion.

The Court must first decide whether to grant counsel's motion to withdraw. Because the Court will deny that motion, the Court then decides whether Fisher is eligible for assigned counsel and, if she is, whether to appoint current counsel to represent Fisher under the Criminal Justice Act.

**1. Whether to grant counsel's motion to withdraw**

Counsel's motion to withdraw is based on Fisher's inability to pay the legal debt she has incurred over the past two-and-a-half years, and that she will continue to incur as this case proceeds to trial over the next six weeks.[3] As the Court noted in its October 11, 2017 Order, the New York Rules of Professional Conduct allow an attorney to withdraw because of his client's non-payment of fees only when his client "*deliberately* disregards an agreement or obligation to the lawyer as to the expenses or fees." N.Y. Rule Prof. Conduct 1.16(c)(5) (emphasis added).

Rule 1.16(c)(5)'s text makes clear that "[n]on-payment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw from representation." *United States v. Parker*, 439 F.3d 81, 104 (2d Cir. 2006) (quotation marks and citations omitted). *See also id.* (noting that "the exhaustion of a retainer is not evidence of a

---

[3] Although Fisher was not indicted until January 2015, counsel began representing Fisher during the IRS's criminal investigation. *See* Docket No. 209-1 ¶ 23. Counsel's billing records show that Fisher last made a payment on her debt in ▬▬▬▬. The outstanding $▬▬▬▬ balance has been incurred since ▬▬▬▬.

2

deliberate violation"). Of course, "lawyers are not compelled to provide free legal services to all clients." N.Y.S. Bar Ass'n Ethics Opinion No. 1061 ¶ 15 (2015) (citation omitted). But "mere nonpayment or late payment is not enough" to withdraw from a representation. *Id.* Rather, "[t]he client's failure must be conscious rather than inadvertent, and must not be *de minimis* in either amount or duration. Conversely, a lawyer may withdraw from representing a client who *deliberately* disregards an obligation to pay a lawyer more than a *de minimis* amount for more than a *de minimis* length of time." *Id.* (emphasis added).

The record in this case shows that Fisher has not "deliberately disregard[ed]" an obligation to pay her legal fees. To the contrary, Fisher's CJA financial affidavit states that "███████████████████████████████████████████████████████████████." Docket No. 209-3 at 3. Likewise, counsel and Fisher have entered into a consent judgment on Fisher's home, which is valued at $247,000. Docket No. 209-2 at 2. These facts show that Fisher and counsel have attempted to work out an arrangement under which Fisher can, in some manner, pay her legal debt. To be sure, the amount Fisher owes counsel is not *de minimis*, nor does it appear that Fisher has been delinquent for a *de minimis* period of time: Fisher owes counsel $███████, and she has not made a payment towards her legal debt since ███████. *See* Docket No. 209-5 at 3. Given the large debt Fisher owes, counsel concludes that Fisher "will quite obviously never be able to repay" the fee counsel has billed her. Docket No. 209-1 ¶ 32. But the fact that counsel has arranged a payment plan with Fisher (however long-term) shows that counsel also recognizes that Fisher has not deliberately ignored her obligation to pay counsel. There is, therefore, no evidence that Fisher has deliberately disregarded her obligation to pay her legal fees.

3

Counsel's motion to withdraw is also denied because the Court is not confident that "withdrawal can be accomplished without material adverse effect on the interests of the [Defendant]." N.Y. Rule Prof. Conduct 1.16(c)(1). Counsel tacitly concedes this point. *See* Docket No. 209-1 ¶ 19 ("It may well be that in cases involving a lawyer seeking to withdraw from a matter for lack of funds, the lawyer may try to assure the Court that his or her withdrawal will *not* have a 'material adverse effect on the interests of the Defendant.' But I cannot make such an assertion here.")

This concession is well made. Counsel has represented Fisher for over five years. It is, then, no surprise, that Fisher states that she has "built a deep, well informed, and trusting relationship with [her] legal team." Docket No. 209-2 at 3. Moreover, while this is not a complex structuring case, lead counsel's background makes him among the region's most qualified attorneys to litigate a case involving the IRS. Current counsel is likewise intimately familiar with the tangled procedural history that will likely be at the center of an appeal from any conviction.[4]

If the Court were to relieve counsel, new counsel would, of course, be given time to familiarize himself or herself with this case. But to adjourn trial would only further delay a case that is approaching three years old. And there is no apparent reason why, if public funds are to be expended to help Fisher fund counsel (which they will), the Court should

---

[4] Counsel argues that, "[i]f the Court determines in the context of this Motion to Withdraw that the inability to fund counsel of choice *does* materially affect Ms. Fisher's interests, then it will have made a finding of fact on this Motion to Withdraw that is directly contrary to its finding in the context of Ms. Fisher's Motion for Remedies and Relief [i.e., Fisher's motion to dismiss on Sixth Amendment grounds] that the same circumstances *do not* materially affect Ms. Fisher's interests." Docket No. 209-1 ¶ 14. This argument misconstrues what the Rules of Professional Responsibility require the Court to consider, as well as the conclusion the Court has reached in this case. The Court has *not* determined that Fisher's "inability to fund counsel of choice . . . materially affect[s] Fisher's interests." The Court has concluded that *withdrawal* would materially affect Fisher's interests.

appoint an attorney who would need to spend a significant period of time gaining the intimate familiarity with this case that current counsel already has.

For these reasons, counsel's motion to withdraw is denied.

**2. Whether Fisher is eligible for CJA counsel**

Having denied counsel's motion to withdraw, the Court must now decide whether to appoint counsel to represent Fisher under the Criminal Justice Act, 18 U.S.C. § 3006A. Fisher has filed a completed CJA Form 23 Financial Affidavit, which shows that her monthly salary is $. Fisher's home is valued at $247,000, although she represents that she is unable to obtain a mortgage on her home. Docket No. 209-2 at 3. Fisher also states that her monthly expenses total $.

To qualify for assigned counsel, "the burden is on the defendant to show that [s]he is unable to afford representation, though [s]he need not prove that [s]he is indigent." *United States v. O'Neil*, 118 F.3d 65, 74 (2d Cir. 1997). The CJA Guidelines provide that "[a] person is 'financially unable to obtain counsel' . . . if the person's net financial resources and income are insufficient to obtain qualified counsel." CJA Guideline § 210.40.30(a) (quoting 18 U.S.C. § 3006A(b)). To make this determination, a court should consider "the cost of providing the person and [her] dependents with the necessities of life," *id.* § 210.40.30(a)(1), but a court should not consider "the financial ability of the person's family unless the family indicates willingness and financial ability to retain counsel promptly."[5] *Id.* § 210.40.50. CJA eligibility is not binary: "If a person's net financial resources and income anticipated prior to trial are in excess of the amount

---

[5] Fisher's husband's monthly salary is $. However, Fisher has previously provided an affidavit stating that her husband "has his own expenses and financial obligations, including substantial maintenance payments to his ex-wife, and he will not fund my litigation." Docket No. 31-1 ¶ 4.

needed to provide the person and that person's dependents with the necessities of life and to provide the defendant's release on bond, but are insufficient to pay fully for retained counsel, the [court] should find the person eligible for the appointment of counsel under the CJA and should direct the person to pay the available excess funds to the clerk of the court at the time of such appointment or from time to time thereafter." *Id.* § 210.40.40. Finally, "[a]ny doubts as to a person's eligibility should be resolved in the person's favor," because "erroneous determinations of eligibility may be corrected at a later time." *Id.* § 210.40.30(b).

Fisher's annual salary militates against finding that she is eligible for assigned counsel. But the Court must also consider Fisher's monthly expenses, which she represents are ▬▬▬▬▬▬▬▬▬▬▬▬▬. Several of those expenses, however, cannot reasonably be characterized as "the necessities of life."[6] In other words, Fisher's income appears to be "in excess of the amount needed to provide [her] and [her] dependents with the necessities of life." CJA Guideline § 210.40.40.

Nonetheless, and even after discounting discretionary expenses, Fisher does not appear to have sufficient funds "to pay fully for retained counsel." *Id.* Moreover, the asset that would typically be used to fund counsel in such a situation—Fisher's home—is unavailable here. Fisher represents, in a sworn affidavit, that she has been unable to obtain a mortgage on her home, which is valued at $247,000. Docket No. 209-2 at 3;

---

[6] For instance, Fisher's financial affidavit states that she pays ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Fisher's payment of these expenses is kind, but the expenses cannot be characterized as "necessities of life," particularly when the question before the Court is whether Fisher qualifies for taxpayer-funded counsel. Similarly, Fisher reports that she pays ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Because the Court has not considered Fisher's husband's substantial income in its eligibility determination, the Court will not treat ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

6

209-3 at 2. In short, Fisher appears to have sufficient income for "the necessities of life" but, because she is unable to obtain a mortgage on her home—the asset the Court would expect a defendant in a similar situation to use to fund her legal defense—Fisher does not have sufficient funds to fully retain counsel.[7] In light of this, and because close questions of CJA eligibility should be resolved in the defendant's favor, the Court finds that Fisher is partially eligible for CJA counsel. The Court will, however, require Fisher to make monthly payments to the Clerk of Court in an amount to be determined. *See* CJA Guideline § 210.40.40. As the Court noted in its October 27, 2017 Text Order (Docket No. 220), Fisher must file an affidavit by November 3, 2017 stating the amount of money she believes she is able to contribute on a monthly basis to the cost of assigned counsel.

Finally, the Court appoints Fisher's current counsel, Randall P. Andreozzi, as Fisher's CJA counsel. This mid-case assignment is justified because the circumstances of this case are "sufficiently unusual and extenuating as to justify [such] relief." *United States v. Herbawi*, 913 F. Supp. 170, 172 (W.D.N.Y. 1996). *See* 18 U.S.C. § 3006A(c) (allowing mid-case CJA assignment of retained counsel if "the person is financially able to obtain counsel or to make partial payment for the representation," and if "the interests of justice" require such an appointment). Counsel represents that, at the time Fisher was

---

[7] Counsel's affidavit "remind[s] the Court that [the Court] has already determined, in granting Ms. Fisher a *Monsanto* Hearing, that Ms. Fisher will be unable to fund counsel of choice with the use of the equity in her home." Docket No. 209-1 at ¶ 18. The argument relies on an incorrect premise: The Court reviewed Magistrate Judge Scott's order granting a *Monsanto* hearing to decide only whether the order was "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). An order is clearly erroneous "only if," after "considering the entirety of the evidence," the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 139 (E.D.N.Y. 2013) (quotation marks omitted). "This standard is highly deferential." *Id.* (quotation marks omitted). Thus, a district court may not reject a magistrate judge's non-dispositive order "merely because the [district] court would have decided the matter differently." *Rubin v. Valincenti Advisory Svcs., Inc.*, 471 F. Supp. 2d 329, 333 (W.D.N.Y. 2007). In other words, a decision affirming a non-dispositive order does not, as counsel argues, necessarily mean that the Court agreed with the findings it was reviewing.

indicted, "counsel determined that it would represent Ms. Fisher in the matter . . . with the assurance that Ms. Fisher would do her best to finance litigation costs and secure a mortgage on her home to secure funds to that end." Docket No. 209-1 ¶ 23. Even without a *lis pendens* on Fisher's home, however, it likely would have been difficult for Fisher to obtain a mortgage, given that her home was listed as a forfeitable asset in a federal indictment.[8] Moreover, the Court recognizes that, at the time Fisher was indicted, counsel did not anticipate the extensive litigation that would ensue from Magistrate Judge Scott's *sua sponte* disclosure of grand jury materials.

The Court has hesitated to grant a mid-case assignment in light of the fee that counsel has already charged Fisher. Both parties recognize that that fee is large, particularly compared to Fisher's income and assets. This case has not followed a routine course, and the Court does not doubt that counsel has spent substantial time on it. Even with these considerations, however, $▮ is an extremely large fee for a relatively simple structuring case that is nearing the end of pre-trial proceedings.

But despite the Court's serious misgivings about using CJA funds after counsel has billed Fisher slightly less than $▮, the Court finds that the interests of justice are best served by appointing Fisher's retained counsel as her CJA counsel. Counsel has represented Fisher for a number of years, and trial is now just several weeks away. Appointing new counsel would result in further delay, as well as the additional expenditure of even more public funds so that a new attorney could become familiar with this case. Moreover, Fisher's obvious trust in her current counsel—together with her objection to

---

[8] The Court assumes that, at the time of counsel's discussion with Fisher regarding payment, counsel was unaware that any indictment in this case would contain a forfeiture allegation listing Fisher's home.

counsel's motion—convinces the Court that the interests of justice are best served by appointing Fisher's current counsel, Randall P. Andreozzi, to represent Fisher.

The Court's reluctance to grant a mid-case CJA assignment should, the Court hopes, serve as a reminder to the bar "that the safety net of the Act is meant to protect defendants who lack the resources to defend against criminal charges. . . . The CJA does not and will not provide coverage for lawyers who made bad bargains with their clients." *United States v. Zaccaria*, No. 95-CR-97S-29, 1997 WL 642985, at *3 (W.D.N.Y. Apr. 11, 1997). A mid-case CJA assignment is the limited exception—not the rule—when a client is no longer able to pay his or her retained attorney.

## CONCLUSION

For the reasons stated above, counsel's motion to withdraw is denied, but Fisher's retained attorney, Randall P. Andreozzi, Esq., is appointed to the Western District of New York's CJA Panel *pro hac vice* and appointed to represent Fisher under the CJA.

**SO ORDERED.**

Dated: November 2, 2017         /s/ Richard J. Arcara
   Buffalo, New York           HONORABLE RICHARD J. ARCARA
                                           UNITED STATES DISTRICT JUDGE