**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

UNITED STATES OF AMERICA,

           v.

GEORGINA FISHER,

           Defendant.
_____

15-CR-19-A
**DECISION AND ORDER**

The Defendant, Georgina Fisher, is charged with eight counts of causing, or attempting to cause, a financial institution to fail to file a report required by 31 U.S.C. § 5325(a)(2), and the regulations thereunder, in violation of 31 U.S.C. § 5324(a)(1).[1] Fisher has filed a motion to dismiss the superseding indictment for failure to state an offense. For the reasons stated below, the motion is denied.

## DISCUSSION

### A. The timeliness of Fisher's motion

The Government first argues that Fisher's motion, which she filed on October 25, 2017—over two-and-a-half years after this case was indicated, but just six-and-a-half weeks before trial—is untimely. Pursuant to Magistrate Judge Scott's scheduling order, pre-trial motions were due, at the latest, by August 28, 2017. *See* Docket No. 39 (setting motions deadline, at the latest, "60 days after the Court acts on defendant's [*Monsanto*] motion, or 60 days after the Government completes voluntary discovery, whichever

___
[1] The Court has previously referred to the charges in this case as "structuring" charges—a characterization Fisher objects to. *See* Docket No. 231 at 2 n.1. "The title of § 5324 is 'Structuring to evade reporting requirements prohibited.' Given that subsection (a)(1) is a part of § 5324, generally characterizing the conduct charged" in the superseding indictment "as 'structuring,' while perhaps a bit loose," is not an incorrect characterization of the conduct charged in this case. *United States v. Leon*, 841 F.3d 1187, 1193 (11th Cir. 2016) (citation omitted).

1

comes later"); Docket No. 175 (final decision arguably resolving *Monsanto* motion). Moreover, Fisher's current motion to dismiss was filed nearly *two years* after she filed a prior motion to dismiss for alleged grand jury misconduct and Sixth Amendment violations.

The Government has raised a persuasive argument that Fisher's motion to dismiss should be denied as untimely, particularly because the grounds for her motion—failure to state an offense—have been "reasonably available," Fed. R. Crim. P. 12(b)(2), since the day this case was indicted. Nonetheless, the Court will not deny Fisher's motion as untimely.

With one exception, no court appears to have interpreted 31 U.S.C. § 5324(a)(1)—the statute Fisher is charged with violating—in any significant detail. And the one court that *has* interpreted the statute recently noted that no pattern jury instructions exist for a § 5324(a)(1) charge. *See United States v. Leon*, 841 F.3d 1187, 1195, n.1 (11th Cir. 2016). Given the dearth of authority on § 5324(a)(1), and because the Court will need to interpret both the statute and the superseding indictment when it charges the jury, beginning that process now—rather than mid-way through trial—will allow for a more orderly, efficient, and fair trial.

### B. The merits of Fisher's motion

#### 1. Standard of review

It is well settled that, "[i]n deciding a motion to dismiss an indictment for failure to state a criminal offense, a court must assume the truth of the allegations in the indictment and determine whether the indictment is valid on its face." *United States v. Pirk*, 2017 WL 3188482, at *2, --- F. Supp. 3d --- (W.D.N.Y. 2017) (quotation marks and citations

omitted). To survive this review, an indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quotation marks omitted). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecution." *Hamling v. United States*, 418 U.S. 87, 117 (1974). In deciding a motion to dismiss for failure to state an offense, a court may generally not "look[] beyond the face of the indictment," nor may it "dr[a]w inferences as to the proof that would be introduced by the government at trial." *United States v. Alfonso*, 143 F.3d 772, 886 (2d Cir. 1998). Finally, and importantly, when reviewing an indictment for sufficiency, "common sense must control." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992). *See also United States v. Torres*, 191 F.3d 799, 805 (7th Cir. 1999) (noting that a court must review an indictment "as a whole, rather than in a hypertechnical manner") (quotation marks omitted).

### 2. The superseding indictment's charges

Fisher's motion to dismiss turns on the language of both the superseding indictment and the statutes charged and cited in the indictment. Fisher, as noted, is charged with eight counts of causing, or attempting to cause, a financial institution to fail to file a report required by 31 U.S.C. § 5325(a)(2), and the regulations thereunder, in violation of 31 U.S.C. § 5324(a)(1). The superseding indictment charges, in relevant part, that:

> On or about the dates set forth [in the superseding indictment], in the Western District of New York, the defendant, Georgina Fisher . . ., did

knowingly and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5325(a)(2), and regulations prescribed thereunder, cause, and attempt to cause, Western Union, a domestic financial institution, to fail to file a report required under Title 31, United States Code, Section 5325(a)(2), and regulations prescribed thereunder, through the purchase of money orders in the amounts set forth below from agents of the domestic financial institution as set forth [in each count of the superseding indictment].[2]

Section 5324(a)(1) of Title 31—the statute Fisher is charged with violating—provides, in relevant part, as follows:

> No person shall, for the purpose of evading the reporting requirements of section 5313(a) or 5325 [of Title 31] or any regulation prescribed under any such section . . . —
>
> > (1) Cause of attempt to cause a domestic financial institution to fail to file a report required under section 5313(a) or 5325 or any regulation prescribed under any such section . . .

Finally, § 5325 of Title 31—one of the statues referenced in § 5324(a)(1), and the statute cited in the superseding indictment—provides as follows:

> (a) In General.—No financial institution may issue or sell a . . . money order to any individual in connection with a transaction or group of such contemporaneous transactions which involves United States coins or currency (or such other monetary instruments as the Secretary may prescribe) in amounts or denominations of $3,000 or more unless—
>
> > \*   \*   \*
>
> > (2) the individual furnishes the financial institution with such forms of identification as the Secretary of the Treasury may require in regulations which the Secretary shall prescribe and the financial institution verifies and records such information in accordance with regulations which such Secretary shall prescribe.

---

[2] Each count of the superseding indictment alleges that, on a particular day, Fisher purchased a number of specifically-identified money orders.

(b) Report to Secretary upon request.—Any information required to be recorded by any financial institution under paragraph . . . (2) of subsection (a) shall be reported by such institution to the Secretary of the Treasury at the request of such Secretary.

Fisher makes several arguments for dismissal based on the language of these statutes and the superseding indictment.

### 3. Whether section 5325(a)(2) contains a reporting requirement

Fisher's primary argument is straightforward: The superseding indictment charges her with causing, or attempting to cause, a financial institution "to fail to file a report required under Title 31 United States Code, Section 5325(a)(2), and regulations prescribed thereunder." But, Fisher argues, § 5325(a)(2) does *not* contain any reporting requirements. Instead, the statute only requires a financial institution to collect "such forms of identification as the Secretary of the Treasury may require," and to "verif[y] and record[] such information in accordance with regulations which such Secretary shall prescribe."

In contrast with § 5325(a)(2), Fisher notes that § 5325(b)—which is not cited in the superseding indictment—*does* contain a reporting requirement. Specifically, § 5325(b) requires a financial institution to "report[]" to the Department of the Treasury, upon the Department's request, "[a]ny information required to be recorded by any financial institution" by § 5325(a)(2).

Fisher's argument relies on a selective reading of the superseding indictment. The superseding indictment charges Fisher with causing, or attempting to cause, a financial institution "to fail to file a report required under Title 31, United States Code, Section 5325(a)(2), *and regulations prescribed thereunder.*" As this language suggests, § 5325(a)(2) authorizes the Secretary of the Treasury to promulgate regulations

implementing the statute's identification requirement. The statute provides that, if a financial institution "issue[s] or sell[s]" money order in "amounts or denominations of $3,000 or more," the purchaser must "furnish[] the financial institution with such forms of identification as the Secretary of the Treasury may require *in regulations which the Secretary shall prescribe*." *Id.* (emphasis added). Moreover, the statute requires the financial institution to "verif[y] and record[] such information *in accordance with regulations which such Secretary shall prescribe*." *Id.* (emphasis added).

As § 5325(a)(2) authorizes him to do, the Secretary of the Treasury has issued regulations implementing the statute's identification requirement. If a person purchasing money orders "does not have a deposit account with the financial institution," the financial institution must "obtain[]" information such as the person's name and address, and it must also "maintain[] records" of that information. 31 C.F.R. 1010.420(a)(2). Critically, the regulations issued under § 5325(a)(2) also require a financial institution to retain the records it creates for a period of five years, and the regulations require that those records "be made available to the Secretary upon request at any time." 31 C.F.R. 1010.420(c). *See also Amendment to the Bank Secrecy Act Regulations Relating to Identification Required to Purchase Bank Checks, Cashier's Checks, Money Orders and Traveler's Checks*, 55 Fed. Reg. 20,139, 20,142 (May 15, 1990) ("Financial institutions are reminded that Treasury has the right to request this information at any time.")

This reporting requirement is substantively indistinguishable from the reporting requirement in § 5325(b)—a reporting requirement that Fisher acknowledges "can . . . be

charged under Section 5324(a)(1)'s criminalization of those who cause or attempt to cause a failure 'to report required under section 5313(a) or 5325.'"  Docket No. 246 at 9.[3]

Fisher's motion to dismiss based on the argument that § 5325(a)(2) does not contain reporting requirements is, therefore, without merit.

### 4. Whether the superseding indictment must (or does) allege that the Secretary of the Treasury has requested a report

Fisher next argues that § 5325(b)'s reporting requirement (which is effectively contained in 31 C.F.R. 1010.420(c)) is "triggered *only* when the Secretary of the Treasury has requested a report," and that, "[a]bsent such a request from the Secretary the financial institution has no reporting requirement, regardless of whether it has or doesn't have identification information recorded."  Docket No. 246 at 9-10 (emphasis in original). Fisher, in other words, argues that the superseding indictment must allege that that the Secretary of the Treasury has requested a report from Western Union because "the specific facts underlying the condition are 'essential facts constituting the offense charged.'"  *Id.* at 10 (citing Fed. R. Crim. P. 7(c)(1)).

The Court will assume for the sake of analysis that a conviction under § 5324(a)(1), for causing a failure to file a report required by § 5325, requires the Government to prove that the Secretary of the Treasury requested a report from the financial institution at issue.

---

[3] Section 5325(b) of Title 31 of the U.S. Code provides that: "Any information required to be recorded by any financial institution under [§ 5325(a)(2)] shall be reported by such institution to the Secretary of the Treasury at the request of such Secretary."

Section 1010.420(c) of Title 31 of the C.F.R. provides that: "Records required to be kept [under 31 C.F.R. 1010.420] shall be retained by the financial institution for a period of five years and shall be made available to the Secretary upon request at any time."

Contrary to Fisher's argument (Docket No. 266 at 2), 31 C.F.R. 1010.420(c) could only have been issued pursuant to 31 U.S.C. § 5325(a)(2), and not § 5325(b).  Of the two statutes, only the former authorizes the Secretary of the Treasury to promulgate any sort of regulation.  *See, e.g.*, *Am. Library Ass'n v. FCC*, 406 F.3d 689, 691 (D.C. Cir. 2005) ("It is axiomatic that administrative agencies may issue regulations only pursuant to authority delegated to them by Congress.")

7

The Court assumes, in other words, that the Treasury Department's request for a report is an element of a prosecution under § 5324(a)(1) and § 5325.

Even with this assumption, the superseding indictment states an offense because it "track[s] the language of the statute charged" and because it alleges the times and places where Fisher allegedly committed the crimes charged. *Alfonso*, 143 F.3d at 776 (quotation marks omitted). *See United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002) (stating that an indictment that tracks the statutory language and identifies the time and place of the alleged offense "satisf[ies] the pleading requirements of Fed. R. Crim. P. 7(c)(1)"). The superseding indictment alleges that Fisher "cause[d], and attempt[ed] to cause, Western Union, a domestic financial institution, to fail to file a report required under Title 31, United States Code, Section 5325(a)(2), and regulations prescribed thereunder." Docket No. 20 at 1. The superseding indictment does not expressly allege that the Secretary of the Treasury requested a report from Western Union, but "an indictment must be read to include facts which are necessarily implied by the specific allegations made." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (brackets and quotation marks omitted). The superseding indictment's allegation is sufficient to state an offense. Any further allegation would be inconsistent with the Federal Rules of Criminal Procedure, which "encourage succinct pleading." *Id. See also id.* ("When an indictment delineates the elements of a charged offense, however, concisely, the underlying concerns of proper pleading—notice of the charge to be met and protection against double jeopardy—may be further promoted by a bill of particulars or pre-trial discovery.")

Whether a report was in fact requested in this case (again, assuming a request is an element of the crime charged) is a question about the sufficiency of the evidence.

Except in the rarest of circumstances, however, "the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *Alfonso*, 143 at 776-77. To *require* an allegation of a report request, as Fisher argues, would turn the well-settled "succinct" criminal pleading standard into something more akin to the standard for civil pleadings.

Thus, assuming that a report request from the Secretary of the Treasury is an element of a § 5324(a)(1) and § 5325 offense, the superseding indictment sufficiently alleges that element. In due course, the Court will resolve whether to instruct the jury that a report request is an element of a § 5324(a)(1) offense. The Court notes, however, that, if a report request *is* an element of the crime charged, and if the Government's case-in-chief does not include evidence of a report request, the Court still intends to instruct the jury, at the very least, on the theory of attempt. *See* L. Sand, et. al, *Modern Federal Jury Instructions: Criminal*, Instruction 10-1 (Attempt to Commit a Crime—General Instruction (2016); *id.* Instruction 10-2 (Affirmative Defense—Legal or Factual Impossibility).

### 5. Whether the superseding indictment must allege Western Union's knowledge of more than $3,000 in money orders

Fisher's final argument is that "[t]he Superseding Indictment alleges a series of money-order purchases that by their own terms do not cross Section 5325's $3,000 recordkeeping threshold." Docket No. 246 at 11. For instance, Count 1 alleges that, on January 28, 2010, Fisher purchased sixteen money orders in the following manner:

| DOMESTIC FINANCIAL INSTITUTION AGENT | AMOUNT |
|---|---|
| Western Union Agent 155648 | $500 |
| Western Union Agent 155648 | $500 |
| Western Union Agent 155648 | $500 |
| Western Union Agent 155648 | $500 |
| | |
| Western Union Agent 123895 | $500 |
| Western Union Agent 123895 | $500 |
| Western Union Agent 123895 | $500 |
| Western Union Agent 123895 | $500 |
| | |
| Western Union Agent 130768 | $500 |
| Western Union Agent 130768 | $500 |
| Western Union Agent 130768 | $500 |
| Western Union Agent 130768 | $500 |
| | |
| Western Union Agent 101490 | $500 |
| Western Union Agent 101490 | $500 |
| Western Union Agent 101490 | $500 |
| Western Union Agent 101490 | $500 |
| | |
| **Total: 16 Money Orders** | **Total: $8,000** |

Fisher notes that her purchases at each store fell under § 5325's $3,000 recording threshold. Thus, Fisher argues, even if the Secretary of the Treasury *had* requested a report from Western Union, Western Union would have nothing to report because it had nothing to record; Western Union has no obligation to ask for identification if Fisher's purchases were below $3,000. Fisher therefore argues that she cannot be held liable "for money-order transactions that did not require Western Union to record—much less report—any information under Section 5325 in the first place." Docket No. 246 at 13. This is because (at least in the Eleventh Circuit) "'[a] person cannot be convicted of violating § 5324(a)(1) unless the financial institution's obligation to file a [report] has been triggered.'" *Id.* (citing *United States v. Leon*, 841 F.3d 1187, 1195 (11th Cir. 2016)).

The Treasury Department's regulations implementing 31 U.S.C. § 5324(a)(2) contain an aggregation rule that applies in situations such as the one alleged in the superseding indictment. That rule states that:

> Contemporaneous purchases of the same or different types of instruments totaling $3,000 or more shall be treated as one purchase. Multiple purchases during one business day totaling $3,000 or more shall be treated as $3,000 or more shall be treated as one purchase if an individual employee, director, officer, or partner of the financial institution has knowledge that these purchases have occurred.

31 C.F.R. 1010.420(b).

Fisher recognizes that this aggregation rule could apply to her purchases, but she argues that the superseding indictment should nonetheless be dismissed because it "does not allege" that "'an individual employee, director, officer, or partner' of Western Union had 'knowledge' of all 16 purchases." Docket No. 246 at 12.

Again, however, this argument relies on a pleading standard that does not exist in a criminal case. Fisher is charged—in an indictment that tracks the relevant statutory language—with "caus[ing]" or "attempt[ing] to cause, Western Union to fail to file a report. Docket No. 20 at 1. Mindful that "common sense must control" when reviewing an indictment, *Stavroulakis*, 952 F.2d at 963, the superseding indictment can, quite fairly, be read to allege that, by purchasing more than $3,000 in money orders from multiple stores (but never more than $3,000 at each store), Fisher deprived a Western Union "employee, director, officer, or partner" of the opportunity to have "knowledge" of her aggregated purchases. In allegedly doing so, she would have caused Western Union to fail to record information about her purchases to then report to the Secretary of the Treasury. *Cf. United States v. Heyman*, 794 F.2d 788, 792 (2d Cir. 1986) (affirming, on 18 U.S.C.

11

§ 2(b) theory, convictions under 31 U.S.C. §§ 5313 and 5322, where defendant "structured his customer's deposits by dividing large sums into smaller portions and depositing them into newly-created accounts on the same day," and where brokerage firm "would have been required to file a CTR for cumulative deposits in a single day"); *United States v. Phipps*, 81 F.3d 1056, 1061 (11th Cir. 1996) (noting that § 5324(a)(1) was intended to be "a restatement" of liability under § 2(b)) (quotation marks omitted).[4]

## CONCLUSION

For the reasons stated above, Fisher's motion to dismiss the superseding indictment is denied.

**SO ORDERED.**

Dated: December 5, 2017  
 Buffalo, New York

 *s/Richard J. Arcara*  
HONORABLE RICHARD J. ARCARA  
UNITED STATES DISTRICT JUDGE

---

[4] Because the Government's theory of this case appears to involve the allegation that Fisher sought to prevent Western Union from aggregating money order purchases, the parties should be prepared to advise whether they believe the Court's jury instructions must include the Treasury Department's aggregation regulation for money order purchases. *See United States v. Leon*, 841 F.3d 1187, 1195 (11th Cir. 2016) (affirming, on plain error review, § 5324(a)(1) conviction based on currency transaction report violation but noting that the jury instructions "were not perfect" because "[t]hey did not mention the Treasury's 'aggregation' regulation, under which the government was proceeding").