**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

_____

UNITED STATES OF AMERICA,

v.

GEORGINA FISHER,

            Defendant.

_____

15-CR-19-A
**DECISION AND ORDER**

This case is before the Court on both parties' motions *in limine*.[1] For the reasons stated below, the Government's motions *in limine* are granted in part and denied in part, and Fisher's motion *in limine* is denied as moot.

**1. The Government's motions *in limine***

The Government makes three requests. First, the Government seeks to introduce evidence that Fisher purchased a substantial number of money orders during the nine-month period immediately preceding the time period charged in the superseding indictment. Second, the Government seeks to introduce evidence that Fisher's daily money purchases were almost all below an uncharged currency reporting threshold. And third, the Government seeks to introduce certain statements that Fisher made during an interview with two IRS agents, while excluding certain of her other statements.

**A. Uncharged money order purchases**

The Government first moves to introduce evidence that, during the nine-month period preceding the conduct charged in the superseding indictment, Fisher purchased over $300,000 in money orders, and that she did so by making "structured financial

---

[1] The Court assumes familiarity with this case's factual and procedural history. *See United States v. Fisher*, 225 F. Supp. 3d 151 (W.D.N.Y. 2017); *United States v. Fisher*, --- F. Supp. 3d ---, 2017 WL 2790651 (W.D.N.Y. 2017).

1

transactions" that were "similar" to those alleged in the superseding indictment Docket No. 201 at 5.[2]

Federal Rule of Evidence 404(b) permits the Government to introduce evidence of a prior "crime, wrong, or other act" to prove a fact other than a defendant's propensity to engage in criminal conduct.[3] Fed. R. Evid. 404(b)(1). The Second Circuit "take[s] an inclusive approach to other acts evidence: it can be admitted for any purpose except to show criminal propensity." *United States v. Germosen*, 139 F.3d 120, 127 (2d Cir. 1998) (quotation marks omitted). These purposes include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The primary limit on other-acts evidence comes from Rule 403: other-acts evidence is inadmissible only if "the trial judge concludes that its probative value is substantially outweighed by its potential for unfair prejudice." *Germosen*, 139 F.3d at 127.

Evidence of Fisher's uncharged money order purchases is admissible to prove the related issues of intent and knowledge. Fed. R. Evid. 404(b)(2). Based on the Court's current understanding of the facts, Fisher's knowledge of, and intent to evade, applicable regulatory requirements will be the central issue at trial. To obtain a conviction, the

---

[2] The statute of limitations prevented the Government from seeking an indictment for this uncharged conduct.

[3] The Government argues in the alternative that Fisher's uncharged money order purchases do not fall within the coverage of Rule 404(b) because the purchases are inextricably intertwined with the money order purchases charged in the superseding indictment. Docket No. 201 at 4-6. *See, e.g.*, *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (evidence concerning "uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or it if is necessary to complete the story of the crime on trial") (quotation marks omitted). Because the Court concludes that the uncharged money order purchases are admissible under Rule 404(b), the Court does not decide whether the evidence is inextricably intertwined with the charged conduct.

Government must prove that, in purchasing her money orders, Fisher acted "for the purpose of evading the reporting requirements of . . . section . . . 5325 [of Title 31 of the U.S. Code] and any regulation prescribed" under that section. 31 U.S.C. § 5324(a). Evidence that Fisher purchased money orders in amounts less than $3,000 at a number of stores over an eight-day period—that is, the conduct charged in the superseding indictment—could be seen as evidence that Fisher's "purpose" was to evade the regulatory requirements that come with a purchase of more than $3,000 in money orders. But, given the relatively short period of time charged in the superseding indictment, Fisher's below-$3,000 purchases could also be seen as coincidental.

However, evidence that Fisher engaged in similar conduct over a *ten-month* period makes it "more . . . probable," Fed. R. Evid. 401(a), that her intent during the eight days charged in the superseding indictment was to evade the regulatory requirements that a $3,000 money order would trigger. *Cf. United States v. MacPherson*, 424 F.3d 183, 191 (2d Cir. 2005) (in § 5324(a)(3) prosecution, noting that "the jury that convicted [defendant] could have reasonably inferred from the fact that the defendant chose to deposit a quarter-million dollars through a series of thirty-two small transactions all under $10,000 that he knew of the reporting requirements applicable to cash transactions over $10,000 and was intent on avoiding them"). Moreover, the strong similarity between Fisher's charged and uncharged money order purchases demonstrates the high probative value of the uncharged purchases. *See United States v. Cadet*, 664 F.3d 27, 33 (2d Cir. 2011) ("When 'other act' evidence is offered to show knowledge or intent . . . such evidence must be sufficiently similar to the conduct at issue to permit the jury to draw a reasonable inference of knowledge or intent from the other act.") (quotation marks omitted). *See*

Docket No. 201 at 5 (representing that uncharged money order purchases were "similar" to money order purchases with which Fisher is charged); *Fisher*, 225 F. Supp. 3d at 157 (summarizing grand jury testimony and noting that, according to a witness, "over a ten-month period Fisher . . . purchased more than $300,000 in money orders at a number of stores, but that Fisher made her purchases in increments of less than $3,000 per store"). Evidence of Fisher's uncharged money order purchases is, therefore, highly probative of her intent and knowledge.

Before admitting Rule 404(b) evidence, however, the Court must "determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice" under Rule 403. *Huddleston v. United States*, 485 U.S. 681, 691 (1988).

To make this evaluation, the Court first looks to whether evidence of the uncharged money order purchases would tend to prove a fact that may be proven by other, less prejudicial evidence. *See Old Chief v. United States*, 519 U.S. 172, 184 (1997) (noting that the probative value of a particular piece of evidence "may be calculated by comparing evidentiary alternatives"); *id.* at 184-85 ("[T]he [Advisory Committee Notes] leave no question that when Rule 403 confers discretion by providing that evidence 'may' be excluded, the discretionary judgment may be informed not only by assessing an evidentiary item's twin tendencies, but by placing the result of that assessment alongside similar assessments of evidentiary alternatives.")

Here, Fisher's uncharged conduct would tend to prove an issue—her intent—that is often difficult to prove by direct evidence. *See United States v. Salameh*, 152 F.3d 88, 143 (2d Cir. 1998) ("[A]s a general rule most evidence of intent is circumstantial.") To be

4

sure, the Government intends to introduce evidence that, when two IRS agents interviewed Fisher in April 2012, she told the agents that "you don't have to show ID if it's less than $3,000." Docket No. 250 ¶ 10. This statement is, of course, probative of intent. But it is more probative of knowledge of the $3,000 identification requirement, and to the extent it helps prove intent, it does so in a way that is qualitatively different than evidence of Fisher's uncharged money order purchases.

Evidence of Fisher's uncharged money order purchases is, therefore, highly probative. Thus, to be inadmissible under Rule 403, the prejudice from the evidence must be considerable if it is to "substantially outweigh[]," Fed. R. Evid. 403, the evidence's probative value.

The question whether evidence is so prejudicial as to be inadmissible is not a question "whether the evidence [is] suggestive of guilt—as all relevant evidence offered against the defendant would suggest guilt—but rather, whether 'it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence.'" *United States v. Massino*, 546 F.3d 123, 132 (2d Cir. 2008) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)). "This 'adverse effect' may consist of a 'tendency of the evidence in question to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant.'" *Id.* at 133 (quoting *Figueora*, 618 F.2d at 943).

The potential "adverse effect" in this case comes from the possibility that the jury might consider evidence of Fisher's uncharged purchases for something other than the "issue that justified [the evidence's] admission into evidence." *Massino*, 546 F.3d at 132 (quotation marks omitted). That is, there is some risk that, after hearing about ten months'

worth of unquestionably unusual financial activity, a jury might improperly assume that Fisher engaged in *some* sort of illegal activity, even if the jury is unsure whether she committed the crimes she is charged with. The Court has carefully considered this argument but is not persuaded that the potential prejudice "substantially outweighs" the evidence's probative value.

This is because none of the uncharged conduct the Government seeks to introduce is "more sensational or disturbing" than Fisher's charged conduct. *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). *See also United States v. Mercado*, 573 F.3d 138, 142 (2d Cir. 2009) (affirming Rule 403 decision where other-acts evidence was "not especially worse or shocking than the transactions charged"). Indeed, both the charged and uncharged conduct in this case is nearly identical. Moreover, both the charged and uncharged conduct is relatively benign and not inherently blameworthy. It is not, in other words, the sort of conduct that will outrage or enflame a jury.

For these reasons, and pursuant to Rule 404(b), the Court grants the Government's motion to introduce evidence that Fisher made money order purchases between May 8, 2009 and January 28, 2010. Fisher has requested a limiting instruction as to this conduct (Docket No. 226 at 4), and the Court will give one. Fisher shall propose a limiting instruction on or before December 11, 2017.

### B. Evidence of daily aggregated transactions less then $10,000

In addition to introducing evidence of Fisher's uncharged money order purchases, the Government seeks to introduce evidence that, "except for one instance," Fisher "never purchased money orders on a particular day in an amount exceeding $10,000." Docket

No. 201 at 2. If done with the requisite intent, this conduct could constitute a different currency-reporting crime. See 31 U.S.C. §§ 5313(a), 5324(a).

This other-acts evidence is probative for the same reason evidence of Fisher's uncharged money order purchases is probative: It makes "more . . . probable," Fed. R. Evid. 401(a), that, when Fisher purchased the money orders at issue in the superseding indictment, she acted with the "purpose of evading the reporting requirements of Title 31, United States Code, § 5325(a)(2)." Docket No. 20 at 1. If the Government introduced evidence that, on a daily basis, Fisher purchased money orders in amounts less than $3,000 (evidence of one currency reporting crime) and *also* in amounts less than $10,000 (evidence of a second currency reporting crime), it is more probable that Fisher acted with the intent to evade the reporting requirements applicable to the crime she is charged with committing. In other words, evidence that Fisher kept her money order purchases below two different and somewhat obscure reporting thresholds makes it less likely that it was a coincidence that she kept her money order purchases under $3,000.

Different Rule 403 considerations apply to this evidence, however. As an initial matter, the evidence's relative probative value is low. This is because the Government will be permitted to introduce other, stronger evidence of intent—that is, evidence of uncharged money order purchases in amounts less than $3,000. See Old Chief, 519 U.S. at 184 (noting that the probative value of evidence "may be calculated by comparing evidentiary alternatives"). Evidence of ten months' worth of below-$3,000 money order purchases is highly probative of Fisher's intent. Additional evidence of Fisher's intent, while probative, is therefore of lesser importance.

7

Balanced against its low probative value, the Court must next consider whether evidence of below-$10,000 money order purchases might have some adverse effect on the jury or the trial. Evidence that Fisher may have committed a different currency-reporting crime could "confus[e] the issues" and "mislead[] the jury" as to what, exactly, she is charged with. This risk is underscored by the fact that both the charged and uncharged crimes are technical, overlapping, and somewhat confusing to laymen. Fed. R. Evid. 403. Indeed, even without evidence of another currency-reporting crime, some jurors may still think that Fisher engaged in the separate (and uncharged) crime of money laundering. *See Fisher*, 225 F. Supp. 3d at 158-59 (describing questions by grand jurors about whether Fisher could be charged with money laundering).

This risk of confusion substantially outweighs the low probative value of evidence that Fisher kept her purchases below $10,000. Thus, the Government will not be permitted to introduce evidence, or argue to the jury, that there is any significance to the fact that Fisher's daily money order purchases were almost all in amounts of less than $10,000.

### C. Fisher's statements

Two IRS Special Agents interviewed Fisher on April 2, 2012. *See* Docket No. 250. The Government seeks an *in limine* ruling admitting some of the statements Fisher made during this interview and precluding other statements that the Government believes are "self-serving." Docket No. 201 at 11.

Federal Rule of Evidence 801(d)(2)(A) allows one party to introduce an opposing party's own statements. Thus the Government may introduce Fisher's relevant statements, but Fisher "may not introduce [her] own prior out-of-court statements." *United*

*States v. Kadir*, 718 F.3d 115, 124 (2d Cir. 2013). If Fisher seeks to introduce her own out-of-court statements pursuant to the rule of completeness, *see, e.g.*, *United States v. Kopp*, 562 F.3d 141, 144 (2d Cir. 2009), or a hearsay exception, then she must identify the statements she will seek to introduce, as well as the legal basis for introducing those statements.

### 2. Fisher's motion *in limine*

Fisher has filed a motion *in limine* seeking to preclude evidence about her ex-husband, Gregory Fisher. In 2009, Gregory Fisher was sentenced to 36 months' imprisonment after pleading guilty to mail fraud and filing false tax returns.

In its initial response to Fisher's motion, the Government stated that it "maintains that the cash [Fisher used to purchase the money orders at issue] constituted a portion of the proceeds" of Gregory Fisher's crimes. Docket No. 227 at 2. The Government argued that evidence of Gregory Fisher's crimes would help prove Georgina Fisher's motive in this case. Specifically, the Government argued that, "when the defendant married Gregory Fisher on January 4, 2008, she knew that Gregory was under investigation and that that investigation related to his businesses. Gregory Fisher pled guilty to Mail Fraud and Tax Fraud on October 29, 2008. . . . The defendant['s] . . . structuring activity began on May 8, 2009, less than three months before Gregory Fisher's sentencing. The defendant admitted that Gregory Fisher had given her $100,000 or $200,000, though she claimed she returned it to him." *Id.* at 6. This evidence, the Government argues, "proves that a deep and personal relationship existed between the two, such that Gregory Fisher would trust Georgina Fisher to keep a large portion of the fraud proceeds safe, and that she would not report the existence of the fraud proceeds to

9

law enforcement authorities." *Id.* at 8. To this end, the Government sought to introduce (1) Georgina and Gregory Fisher's marriage certificate; (2) Gregory Fisher's plea agreement; (3) the judgment in Gregory Fisher's criminal case; and (4) Gregory Fisher's Bureau of Prisons (BOP) records, to rebut any argument that Gregory Fisher, rather than Georgina Fisher, purchased the money orders at issue in this case.

After Fisher replied to the Government's response, the Government stated that because, in its view, Fisher "will attempt to make a circus of the trial," the Government "will not seek to prove that the $300,000 the defendant structured was the proceeds of Gregory Fisher's fraudulent conduct." Docket No. 240 at 5. Thus, the Government stated that it no longer intends to introduce, in its case-in-chief, Georgina and Gregory Fisher's marriage certificate, or Gregory Fisher's plea agreement and judgment. Issues concerning the admissibility of those documents are, therefore, now moot. Likewise, in light of defense counsel's representation that he has no "reason to believe that Gregory Fisher purchased any of the money orders" at issue and that counsel "does not intend to offer any such inference at trial," Docket No. 247 at 3, the Government's request to introduce Gregory Fisher's BOP records in its case-in-chief is denied as moot.

The Government, however, states that it will still seek to introduce "evidence concerning Gregory Fisher, but only in reference to statements made about him by the defendant, specifically, [her] statements that Gregory Fisher . . . had given her a large sum of cash, namely $100,000 or $200,000, but that such cash was returned to him, and the cash used to purchase the money orders was, instead, her life savings and/or earnings." Docket No. 240 at 5.

This statement is irrelevant to the issues at trial. The Government acknowledged at oral argument (Docket No. 256 at 26:20-22) that the source of the cash Fisher used to purchase her money orders is not an element of a charge under 31 U.S.C. § 5324(a)(1). *See also MacPherson*, 424 F.3d at 193 ("Section 5324 makes no reference to the source of the monies at issue or to the reason why a person seeks to avoid CTR filing. Its singular focus is on the *method* employed to evade that filing requirement, *i.e.*, structuring.")

At oral argument, the Government argued that Fisher's statement is "part of the story" because "[i]t's part of how she came into $300,000 that she could then . . . take and buy" the money orders at issue. Docket No. 256 at 25:24 – 26:1. The Government is correct that Fisher's statement has some narrative relevance, *see Old Chief*, 519 U.S. at 187, but that relevance is minimal. Moreover, given the entirely collateral issues the statement is likely to raise at trial, the Government's motion to introduce the statement is denied. Fisher's motion to compel (Docket No. 225) is therefore denied as moot. *See id.* ¶ 6.

**SO ORDERED.**


Dated: December 6, 2017            _s/Richard J. Arcara_
    Buffalo, New York            HONORABLE RICHARD J. ARCARA
                                                     UNITED STATES DISTRICT JUDGE