**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

UNITED STATES OF AMERICA,

        v.

GEORGINA FISHER,

        Defendant.

15-CR-19-A
**DECISION AND ORDER**

_____

On November 2, 2017, the Court denied counsel's motion to withdraw and appointed Randall P. Andreozzi to represent the Defendant, Georgina Fisher, as assigned counsel under the Criminal Justice Act (CJA). The Court also noted that, because Fisher was only partially eligible for assigned counsel, the Court would "require [her] to make monthly payments to the Clerk of Court in an amount to be determined." Docket No. 229 at 7 (citing CJA Guideline § 210.40.40). At the Court's direction, Fisher filed an affidavit stating that, in light of the information reflected in her CJA Form 23 financial affidavit, she is "unable to pay additional monies each month for CJA counsel." Docket No. 230 ¶ 6.

In a December 5, 2017 Order, however, the Court found, "[b]ased on all the information that has been provided," that Fisher can likely "make monthly payments of $1,500 towards the cost of assigned counsel." See Docket No. 273 at 2. But before ordering payments in that amount, the Court provided Fisher with an opportunity to "submit whatever information and arguments she believes establish her inability to pay $1,500 per month." Id. Fisher has done so. See Docket No. 289.

Fisher's primary argument is that she is "unable to pay any additional monies towards legal representation because she is using any income in excess of her family's

1

monthly living expenses to pay the outstanding legal fees she owes [counsel's law firm,] Andreozzi Bluestein." Docket No. 289 ¶ 5. "Stated differently," Fisher argues, "this Court's determination that [she] must pay $1,500 per month toward her current CJA costs simply means that she must forego payment of $1,500 per month on the outstanding amounts owed to Andreozzi Bluestein and instead pay that money to CJA." *Id.*

The Court's intent in ordering a CJA payment is not to deprive counsel's firm of payment on the undisputed debt the firm is owed. At the same time, however, the fee Fisher owes counsel is very large, and counsel has previously acknowledged that Fisher "will quite obviously never be able to repay" the fee she owes. Docket No. 209-1 ¶ 32. Thus, if the Court were to allow Fisher to defer her CJA payments until counsel's fee was paid in full, Fisher would, very likely, never make a CJA payment. In light of Fisher's substantial monthly income, that result is untenable.

Moreover, the fact that Fisher and her husband "fully shar[e] their expenses and financial obligations, including the payment of her legal expenses," Docket No. 231 at 5, means that Fisher's total monthly expenses, as reported on her CJA Form 23 financial affidavit, appear to be substantially less than her monthly household income. In other words, Fisher's total monthly expenses are not, as the Court previously assumed, just slightly less than "the amount needed to provide [her] and [her] dependants with the necessities of life." CJA Guideline § 210.40.40. Thus, if—as appears to be the case—Fisher's husband helps pay the monthly expenses reported in Fisher's financial affidavit, and assuming that Fisher's reported monthly expenses are all "necessitates of life," *but*

see Docket No. 228 at 6 n.6, Fisher and her husband appear to have just under ▮ per month in disposable income, before payments are made to Andreozzi Bluestein LLP.[1]

This is more than sufficient income to make payments to both Andreozzi Bluestein LLP and the Court. The Court, as noted, does not intend to impose a hardship on counsel. But Fisher will need to pay for the cost of CJA counsel at some point, and given the size of her outstanding debt to counsel, the Court will not consider delaying repayment of Fisher's CJA costs until such time (if ever) that she has fully paid Andreozzi Bluestein LLP. The CJA "imposes responsibilities on this Court to insure that both rich and poor are afforded an adequate defense. But along with that primary responsibility comes an equally important secondary duty this Court owes to the taxpaying public to see to it that their public funds are used only for their intended purpose." *United States v. Zaccaria*, No. 95-CR-97S-29, 1997 WL 642985, at *4 (W.D.N.Y. Apr. 11, 1997). The Court will not have fulfilled that secondary responsibility if it allows Fisher to put off her CJA payments indefinitely.

As noted, however, the Court's intent is not to harm counsel. Thus, pursuant to CJA Guideline § 230.23.20(a), Fisher shall make monthly payments of **$500** towards the cost of assigned counsel until she has made payments totalling $10,300. In the event that counsel incurs fees in excess of the $10,300 compensation maximum (CJA Guideline § 230.23.20(a)), and if a waiver of the compensation maximum is both recommended and

---

[1] Fisher's monthly income is ▮, and her husband's monthly income is ▮. Fisher reports that her monthly expenses, before legal payments, total ▮. Thus, it appears that Fisher's monthly household income is ▮, and her monthly household expenses total ▮ (The Court assumes, based on the size of the federal income tax payment reported on Fisher's financial affidavit, that Fisher has reported both her and her husband's tax payments.) This leaves just under ▮ in disposable monthly income.

approved (CJA Guideline § 230.23.40), the Court will consider ordering additional payments.

**SO ORDERED.**

Dated: January 17, 2018　　　　　　　　　　　　_S/Richard J. Arcara_
　　Buffalo, New York　　　　　　　　　　　HONORABLE RICHARD J. ARCARA
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE